UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

AVALON CARRIAGE SERVICE, INC.,

        Plaintiff,

vs.                                                                      Case No.  3:04-cv-1126-J-32MCR

STUART GAMSEY, etc., et al.,

        Defendants.

_____/

# ORDER[1]

Upon consideration of the motions in limine now pending before this Court and the responses and exhibits thereto, it is hereby

**ORDERED:**

1.      Defendants' Motion in Limine regarding Summary and/or Demonstrative Exhibits Not Previously Produced (Doc. 205, p. 2) is **DENIED without prejudice**.  The Court reserves the right to revisit this issue at trial and will rule upon this Motion on a case by case basis, after having an opportunity to review any exhibits, outside the presence of a jury, that Defendants seek to exclude.

2.      Defendants' Motion in Limine regarding Matters Not Relevant to the Horse-Drawn Carriages or Tour Rides Generally (Doc. 205, p. 3) is **GRANTED**.  Plaintiff

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

argues it should be permitted to present evidence at trial relating to a statement made by Mr. Roger Jolley, a citizen of St. Augustine, that Defendants have a "monopoly."[2] Plaintiff believes this statement is circumstantial evidence of a relevant submarket.

Upon consideration of the document, the Court finds it is not relevant circumstantial evidence of a submarket.  The Supreme Court in <u>Brown Shoe Co. v. United States</u>, 370 U.S. 294, 325, 82 S.Ct. 1502, 1524 (1962) noted various indicia, including the public perception of submarkets, can be used as circumstantial evidence to determine the boundaries of a submarket.  Here, Mr. Jolley's statement does not touch on the indicia used to determine the boundaries of a submarket as mentioned in <u>Brown Shoe</u>; rather, the statement, purportedly made at a community meeting,  asserts in a conclusory fashion that Defendants have a monopoly – a conclusion which does not make it more or less probable that Defendants actually have a monopoly.  This conclusory statement is not the type of evidence which courts have found relevant to circumstantial proof of market power and thus it should be excluded from evidence.

3.      Defendants' Motion in Limine regarding Allegations of Discovery (Doc. 205, p. 4) is **GRANTED.**  Plaintiff argues Defendants intentionally hid relevant financial evidence and reports for the purpose of covering up evidence of their market power and thus, Plaintiff should be permitted to show Defendants' improper discovery conduct as circumstantial evidence of Defendants' liability.  Plaintiff cites <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 147, 120 S. Ct. 2097 (2000) for the proposition

---

[2]  The remaining issues Defendants raise in this Motion are now moot since Judge Moore granted Summary Judgment in favor of the City of St. Augustine, Mark Litzinger, and William Harris and disposed of Plaintiff's conspiracy claim.  (Doc. 172).

that a party's dissembling to cover up evidence of its dishonesty is "affirmative evidence of guilt" and should be admitted here to show circumstantial evidence of Defendants' market power.  Reeves is inapplicable to this issue.  Reeves is an employment discrimination case and the language Plaintiff cites merely demonstrates that an employer's pretextual explanation for terminating an employee may be used to show evidence of intentional discrimination; it does not, however, stand for the proposition that improper conduct by one party in responding to discovery requests can be used as circumstantial evidence of that party's liability.

While this Court is concerned by Plaintiff's allegations that Defendants may have hid discovery, i.e., the Breckenridge report, the circumstances with regard to this alleged discovery violation are not entirely clear.  Plaintiff's counsel stated that Defendants never produced the Breckenridge report, and instead Plaintiff obtained it from a third party after entering into a confidentiality agreement with that third party.  In response to Defendants' motion in limine, however, Plaintiff stated Defendants produced the Breckenridge report only after Plaintiff informed Defendants he intended to file a motion for sanctions.  Thus, there is confusion over the circumstances leading up to Plaintiff's allegations of discovery misconduct.

Nevertheless, the Court finds if Defendants failed to produce discovery after an order from this Court compelling discovery, Plaintiff's proper recourse should have been to move for sanctions in a timely manner.  While the Breckenridge report does appear as though it should have been produced pursuant to Judge Richardson's Order of July 26, 2005 (Doc. 57), the circumstances surrounding this issue are too uncertain for the

Court to permit Plaintiff to refer to Defendants' alleged discovery violations during trial.

As such, Defendants' Motion in Limine regarding Allegations of Discovery (Doc. 205, p.

4) is **GRANTED**.  This ruling, however, does not preclude Plaintiff from eliciting

testimony from its experts, or from other knowledgeable witnesses, during trial

regarding the fact that Plaintiff obtained new information from Defendants or others

which may have caused Plaintiff's experts to amend their opinions; it merely prevents

Plaintiff from presenting evidence that Defendants committed a discovery violation or

wrongfully withheld information.

      4.     Defendants' Motion in Limine regarding References to Relationships

between Counsel and Parties/Witness (Doc. 205, p. 4) is **GRANTED** for the reasons

stated on the record during the April 16, 2007 hearing.

      5.     Defendants' Motion in Limine regarding References to Stuart Gamsey's

Marital Relationship (Doc. 205, pp. 4-5) is **GRANTED** for the reasons stated on the

record during the April 16, 2007 hearing.

      6.     Defendants' Motion in Limine regarding References to Non-Expert and/or

Pre-Litigation Statements on Monopoly (Doc. 205, p. 5) is **DENIED.**  Defendants argue

that construction of a relevant market and a showing of monopoly power must be based

on expert testimony and therefore, the lay testimony Plaintiff seeks to admit into

evidence as evidence of monopoly power is irrelevant.  Plaintiff, on the other hand,

argues statements made by Defendants are direct evidence of monopoly power and

statements made by Defendants or others in the industry are circumstantial evidence of

relevant submarkets.

While the Eleventh Circuit has held that "[c]onstruction of a relevant market and a showing of monopoly power must be based on expert testimony," <u>Bailey v. Allgas, Inc.</u>, 284 F.3d 1237, 1246 (11th Cir. 2002), this does not mean that lay testimony is never permitted to show evidence of market power.  To the contrary, lay testimony can in fact be relevant and helpful to show market power.  Market power may be shown either through direct evidence or circumstantial evidence.  <u>Id</u>.  Direct evidence of market power is rare and is offered by a showing of economic proof, namely, demand and supply curves.  <u>Id.</u> (citations omitted).  Because a party can rarely establish demand with accuracy, monopoly power is most frequently proven by circumstantial evidence of monopoly power.  <u>Id.</u>  The first step in assessing a company's monopoly power through circumstantial evidence is to define the relevant market.  <u>Id.</u>  When attempting to define the relevant market and or submarkets, the parties may present evidence of various indicia including "industry or public recognition of the submarket as a separate economic entity."  <u>Brown Shoe Co. v. United States</u>, 370 U.S. 294, 325, 82 S.Ct. 1502, 1523 (1962).

Here, Plaintiff seeks to offer evidence of statements in the Breckenridge report and from other sources that Defendants controlled the market, had dominant market share, and were able to exclude competition.  While the Court cannot say at this time that all such evidence is admissible, the Court finds Defendants' motion in limine on this issue is due to be **DENIED** because this evidence may well be relevant for the purposes of defining the market through circumstantial evidence.

7.      Defendants' Motion in Limine regarding Miscellaneous Inappropriate Commentary (Doc. 205, p. 6) is **DENIED** for the reasons stated on the record during the April 16, 2007 hearing.

8.      Defendants' Motion in Limine regarding Precluding Plaintiff from Calling Gamsey Defendants' Expert Witness, Mr. Robert Berger, (Doc. 205, pp. 6-7) is **partially GRANTED** for the reasons stated on the record during the April 16, 2007 hearing. Defendants have represented they do not intend to call Mr. Berger as a witness at trial. In the event Plaintiff wishes to call Mr. Berger, Plaintiff must make a showing, outside the presence of the jury, that Mr. Berger's testimony is both relevant and proper.

9.      Plaintiff's Motion to Exclude Argument or Testimony Offered to Prove the Noerr-Pennington Doctrine or Raising it as a Defense (Doc. 208) is **DENIED without prejudice.**  Although it is questionable whether the Noerr-Pennington doctrine applies to any of Defendants' actions -- as alleged by Plaintiff in its Amended Complaint -- the Court cannot say as a matter of law that Defendants are not entitled to assert the Noerr-Pennington doctrine as an affirmative defense to Plaintiff's antitrust claims.  The Court, however, reserves the right to revisit this issue after having an opportunity to consider the evidence related to this matter.

10.     Plaintiff's Motion to Exclude Arguments or Testimony that Mischaracterize Plaintiff's Claim as Relying on the Revocation, Renewal, Expansion, or Property Rights of Horse and Carriage Permits (Doc. 209) is **GRANTED in part.**  Plaintiff seeks to preclude Defendants from arguing Plaintiff's claims are based on the City's refusal to revoke and continuing to renew Defendants' horse and carriage permits and the City's

refusal to expand the number of permits available past the 46 authorized by the City

code.   Rather, Plaintiff argues these statements are mischaracterizations of its antitrust

claims, which are based on Defendants' alleged abuse of the permitting process by

renewing and "hoarding" 29 permits for the illegitimate purpose of establishing a

monopoly and injuring competition.   Defendants state they will not mischaracterize

Plaintiff's claims, but contend they are entitled to use these arguments in support of

their defenses that Plaintiff lacks standing to bring an antitrust claim and failed to

mitigate its damages.

     As Plaintiff's claims concern Defendants' alleged anticompetetive actions and

control of the market, Defendants should refrain from mischaracterizing them as

anything else.   Specifically, this case concerns an antitrust claim and the parties should

narrow their statements to such matters which are relevant to antitrust law.   On the

other hand, the Court will consider on a case by case basis, outside the presence of the

jury, whether any statement or evidence concerning these matters may be used by

Defendants in support of their defense to Plaintiff's antitrust claim.

     11.    Plaintiff's Motion to Exclude all References to Arrests, Convictions, Pleas,

or Police Repots or Criminal Accusations Pertaining to Murphy McDaniels (Doc. 212) is

**GRANTED.**  Plaintiff argues the police reports and related documents Defendants wish

to offer into evidence are irrelevant to the issues in this case and are unfairly prejudicial

and misleading.   Defendants argue Plaintiff's criminal violations are relevant because

the St. Augustine City Commission considers criminal activity in its decision to approve

or disapprove a permit transfer.   Defendants contend that even had Plaintiff properly

acquired a permit, it is questionable whether the City Commission would approve the transfer to Plaintiff because of his past criminal misconduct.  Thus, Defendants contend these reports are relevant to the issue of Plaintiff's standing.

The Court finds these reports relating to Plaintiff's past criminal conduct should not come into evidence.  Not only are these reports apparently dated, but Defendants' argument with regard to why the reports should be admitted into evidence is speculative and perhaps inconsistent with their position that Plaintiff can simply buy the permits from Defendants and have them transferred to Plaintiff.  Moreover, the fact that the City may not approve the transfers is purely conjectural at this point.

However, the Court has not yet had an opportunity to review the specific documents in context and thus, this ruling is without prejudice to Defendants' presenting specific items, outside of the jury's presence, to seek their admission at trial.

12.     Plaintiff's Motion to Exclude Arguments or Testimony Raising the Defense of In Pari Delicto and Defendants' Trial Exhibits 5, 6, and 7 (Doc. 213) is **GRANTED in part**.  Plaintiff seeks to preclude Defendants from raising the in pari delicto defense because it argues such a defense is inapplicable to an antitrust claim.  Defendants agree that an in pari delicto defense is inapplicable to this case.  As such Plaintiff's motion in limine is **GRANTED** with regard to the  in pari delicto defense.

This matter is not, however, resolved entirely by this decision, as Plaintiff raises an additional issue.  Defendants wish to offer into evidence correspondence between the parties' counsel which Defendants believe show Plaintiff has never made a good faith attempt to purchase additional permits from Defendants.  Defendants believe this

-8-

evidence supports two of their affirmative defenses: (1) Plaintiff lacks standing to bring an antitrust claim, and (2) Plaintiff failed to mitigate its damages by not attempting in good faith to purchase permits at market value.

Plaintiff's arguments on this issue are somewhat confusing.  In its motion in limine, Plaintiff asks this Court to preclude Defendants from offering these exhibits into evidence because they have no probative value to any material issue.  Plaintiff, however, also states it was required to show that it inquired into purchasing these permits and that this correspondence is evidence of its inquiry.  Moreover, Plaintiff argues this correspondence demonstrates Defendants' permits were not for sale or were for sale at a monopoly price.

It is unclear whether Plaintiff is asking this Court for an Order to exclude these exhibits entirely, or whether Plaintiff merely seeks an Order preventing Defendants from arguing this evidence demonstrates Plaintiff failed to make a bona fide offer to purchase permits from Defendants.  Seemingly, Plaintiff is arguing that this evidence has some relevance to the issues in this case, i.e., to the issue that Defendants' unused permits were either not for sale or were for sale at an unreasonable price.

This Court has considered the exhibits at issue and because of the confusion surrounding this motion, the Motion is **DENIED without prejudice.**  The Court reserves the right to revisit this issue at a later time if the parties wish to offer additional arguments, outside the presence of the jury, as to why these exhibits are relevant to any issue in this case.

13.     Plaintiff's Motion to Exclude all Evidence and Testimony that Raises Plaintiff's Refusal in Buying and Selling of Horse and Carriage Permits (Doc. 214 ) is **DENIED.**  Although this Motion incorporates a similar issue to that raised in Plaintiff's Motion to Exclude Trial Exhibits 5,6, and 7 above, it is a bit broader in that Plaintiff seeks to exclude any evidence that it refused to buy or sell horse and carriage permits from Defendants because it would have been unreasonable to pay the prices Defendants sought to charge for such permits.  Defendants argue it should be permitted to show Plaintiff's failure to mitigate its damages.  Because an antitrust plaintiff has a duty to mitigate its damages, Golf City, Inc. v. Wilson Sporting Goods, Co., Inc., 555 F.2d 426, 436 (5th Cir. 1977), the Court will allow the parties to present evidence regarding Plaintiff's attempts to buy or sell the horse and carriage permits; however, the Court will determine admissibility on a case by case basis depending on the type of evidence the parties seek to introduce.

14.     Plaintiff's Motion to Strike Jeffery Harrison's November 30, 2005 Affidavit (Doc. 215) is **DENIED as moot.**

15.     The Court reserves the right to amend or change these rulings as warranted.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  12th  day of

September, 2007.

TIMOTHY J. CORRIGAN
United States District Judge

Copies to:

Counsel of Record